**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

| | | |
|---|---|---|
| **DILLARD A. PUTMAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. _____** |
| | ) | |
| **CORPORAL QUENTIN HARRIS,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SERGEANT TRAVIS HAYTON** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Dillard A. Putman ("Mr. Putman"), by counsel, hereby files his Complaint seeking judgement against Defendants Corporal Quentin Harris ("Cpl. Harris") and Sergeant Travis Hayton ("Sgt. Hayton") (collectively, "Defendants"). In support of his claims, Mr. Putman alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Mr. Putman's federal law claims under 28 U.S.C. §§ 1331, 1343(a)(3), (4). This Court has supplemental jurisdiction over Mr. Putman's state law claims under 28 U.S.C. § 1367.

2.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Mr. Putman's claims occurred in the Western District of Virginia.

3.      Assignment to the Abingdon Division of the Western District of Virginia is proper under Western District of Virginia Local Rule 2(a)(1) because a substantial part of the acts and omissions giving rise to Mr. Putman's claims occurred in the County of Tazewell.

## PARTIES

4.      Mr. Putman is and was, at all times relevant, a citizen of the United States and a resident of the Commonwealth of Virginia.

5.      Cpl. Harris is and was, at all times relevant, a resident and domiciliary of the Commonwealth of Virginia and an officer employed by the Tazewell County Sheriff's Office. At all times relevant, Cpl. Harris acted under color of state law.  Cpl. Harris is sued in his individual capacity.

6.      Sgt. Hayton is and was, at all times relevant, a resident and domiciliary of the Commonwealth of Virginia and an officer employed by the Tazewell County Sheriff's Office. At all times relevant, Sgt. Hayton acted under color of state law.  Sgt. Hayton is sued in his individual capacity.

## STATEMENT OF FACTS

7.      On the evening of May 20, 2019, Mr. Putman was sleeping in the forested area of his property that surrounded his home.

8.      Mr. Putman's wife, Kandi Putman ("Ms. Putman"), called 911 and informed dispatch that Mr. Putman had threatened to commit suicide.  Ms. Putman had apparently returned home after work and was unable to find Mr. Putman in their home.

9.      At approximately 6:00 PM, officers employed by the Tazewell County Sheriff's Office arrived at the Putman home.  Ms. Putman gave the officers permission to search the home in order to look for Mr. Putman.  The officers searched the home, but found no signs of Mr. Putman.

10.      Shortly thereafter, Defendants arrived at the Putman home and decided to search for Mr. Putman in the woods surrounding the home (which was also Mr. Putman's property).

2

Defendants began searching the woods, with Cpl. Harris accompanied by a canine unit.

11.    Within a few minutes after the search began, the canine alerted near a large tree that had been uprooted.  Defendants approached the tree, and found Mr. Putman lying down in the shallow hole that had been created by the tree's uprooting.

12.    Defendants then ordered Mr. Putman to stand up.  Confused, Mr. Putman advised the officers that he was on his own property and asked why Defendants had ordered him to stand up.  Cpl. Harris then threatened Mr. Putman that if he did not stand up, Cpl. Harris would release the canine on Mr. Putman.  Mr. Putman complied with Defendants' orders and rose to his feet.  During this initial interaction, Sgt. Hayton kept his service rifle trained on Mr. Putman's chest.

13.    After Mr. Putman rose to his feet, Defendants ordered him to face away from them.  Because Defendants still had not advised Mr. Putman as to why they were on his property, Mr. Putman asked why he was being ordered to turn around.  Cpl. Harris again threatened Mr. Putman that if Mr. Putman did not turn around, the canine would bite him.

14.    After having observed Mr. Putman in a standing position, Sgt. Hayton retired his service rifle and instead pulled out his Taser.  Sgt. Hayton's decision to do so evidenced his belief that Mr. Putman was neither armed nor dangerous.

15.    Defendants then asked Mr. Putman if he had said that he intended to kill himself.  Mr. Putman quickly replied, "No."

16.    Mr. Putman then extended his hands out to show that he was unarmed.  Additionally, Mr. Putman lifted up his shirt, showing his bare skin and his waist, to prove that he had no weapon.

17.    Defendants again told Mr. Putman to turn around.  Mr. Putman refused, again insisting that he was on his own property and asking Defendants to produce a warrant.

18.   At that point, Cpl. Harris suddenly released the canine on Mr. Putman. The canine attacked Mr. Putman, forcing him to the ground. Sgt. Hayton then positioned himself on top of Mr. Putman while Mr. Putman pleaded: "You got me, you got me." Less than 17 seconds had elapsed between when the canine had been released on Mr. Putman and when Mr. Putman told Defendants "You got me, you got me."

19.   Within seconds after Mr. Putman submitted to Defendants' authority, Sgt. Hayton was on top of Mr. Putman with Mr. Putman lying face down on his stomach. Mr. Putman did not offer any resistance to the Defendants' unlawful seizure at any point after the canine had been released.

20.   As Mr. Putman was lying face down and being handcuffed by Sgt. Hayton, Cpl. Harris allowed the canine to bite at and thrash Mr. Putman's upper right arm for approximately 20 continuous seconds. During those 20 seconds, Mr. Putman offered no resistance. Instead, he laid completely still and begged Defendants to stop the dog from attacking him.

21.   In short, for at least 20 seconds, Cpl. Harris allowed his canine to bite and thrash at Mr. Putman's upper right arm as Mr. Putman was completely helpless and subdued by Defendants.

22.   Defendants never charged Mr. Putman with a crime.

23.   As a result of the injuries Mr. Putman sustained from this incident, Mr. Putman suffered severe and permanent injuries to his right arm, with attendant nerve damage, and ultimately required surgery. Mr. Putman will never regain full strength in his right arm.

## COUNT I
### 42 U.S.C. § 1983 -- False Arrest in Violation of the Fourth Amendment
### (All Defendants)

24.   Mr. Putman incorporates the foregoing paragraphs of this Complaint as if fully set

forth herein.

25.    At all times relevant, Mr. Putman, a citizen of the United States and the Commonwealth of Virginia, had a clearly established right under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, to be free from false arrest.

26.    A false arrest in violation of the Fourth Amendment occurs when a law enforcement officer arrests a free citizen without a warrant or probable cause.

27.    Defendants were called to Mr. Putman's home to investigate a potential medical emergency.  Defendants had no probable cause to believe that any person had committed any crime.

28.    After Defendants discovered Mr. Putman resting on his own property, Mr. Putman extended his hands out and lifted his shirt to prove that he had no weapon.  Moreover, Mr. Putman advised the Defendants that he had not said he would commit suicide.  At this point, any reasonable officer would perceive that Mr. Putman did not have the intent or the present ability to commit suicide.

29.    The only basis Defendants had to seize Mr. Putman was an allegation by Mr. Putman's wife that Mr. Putman had said he would commit suicide.  Nothing Defendants personally observed confirmed that allegation.  In fact, as articulated in paragraph 28 supra, Defendants' investigation disproved Ms. Putman's fear that Mr. Putman would attempt suicide.

30.    No reasonable officer would believe that Ms. Putman's bare allegation that Mr. Putman had threatened to commit suicide constituted probable cause to seize Mr. Putman for a mental health seizure.

31.    Additionally, Defendants' own investigation did not provide any evidence that Mr. Putman in fact intended to commit suicide, or had the present ability to do so.

32.    Moreover, Defendants did not suspect that Mr. Putman had committed any crime.

33.    Notwithstanding the fact that Defendants did not have probable cause to arrest Mr. Putman, Defendants, while acting under color of state law, effectuated an unlawful and false arrest on Mr. Putman when Cpl. Harris released the canine on Mr. Putman and Sgt. Hayton pinned Mr. Putman to the ground and handcuffed him.

34.    Defendants arrested Mr. Putman on his own property without probable cause or any other justifiable reason.  No reasonable officer would have believed that the officer had probable cause to arrest Mr. Putman under these circumstances.

35.    As a direct and proximate result of the unconstitutional conduct set forth in this Count by Defendants, Mr. Putman suffered substantial physical injury, mental anguish, and emotional harm.  Mr. Putman was also forced to incur unnecessary medical costs due to the severely and permanently injured right arm he suffered as a result of his interaction with Cpl. Harris, as well as the damages more specifically addressed in the "Damages" section below.

## COUNT II
### 42 U.S.C. § 1983 – Use of Excessive Force in Violation of the Fourth Amendment
### (Cpl. Harris)

36.    Mr. Putman incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

37.    At all times relevant, Mr. Putman, a citizen of the United States and the Commonwealth of Virginia, had a clearly established right under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, to be free from the use of excessive force.

38.    Through his actions set forth herein, Cpl. Harris, while acting under color of state law, conducted an unreasonable seizure of Mr. Putman in that he employed excessive force to physically restrain Mr. Putman in violation of his clearly established Fourth and Fourteenth

6

Amendment rights by allowing his canine to viciously bite and thrash at Mr. Putman's upper right arm for 20 uninterrupted seconds after Mr. Putman had been pinned to the ground, was not resisting arrest, and did not present a danger to himself or to anyone else. Cpl. Harris's decision to allow his canine to continue to bite and thrash at Mr. Putman's upper right arm during those 20 seconds was excessive and has no conceivable justification.

39.     As a direct and proximate result of the unconstitutional conduct set forth in this Count by Cpl. Harris, Mr. Putman suffered substantial physical injury, mental anguish, and emotional harm. Mr. Putman was also forced to incur unnecessary medical costs due to the severely and permanently injured right arm he suffered as a result of his interaction with Cpl. Harris, as well as the damages more specifically addressed in the "Damages" section below.

**COUNT III**
**State Law Battery**
**(Cpl. Harris)**

40.     Mr. Putman incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

41.     Cpl. Harris unlawfully battered Mr. Putman when he intentionally allowed his canine to bite and thrash Mr. Putman's upper right arm after Mr. Putman had been pinned to the ground, was not resisting arrest, and did not present a danger to the safety of himself or to anyone else. Gnadt v. Commonwealth, 27 Va. App. 148, 151 ("An unlawful arrest or an arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful.").

42.     In doing so, Cpl. Harris committed an unwanted and unlawful touching upon Mr. Putman.

43.     This touching was without Mr. Putman's consent, without excuse, and without

any legal justification.

44.    Specifically, any reasonable officer would know that it was unlawful to a canine to bite at and thrash a person's arm after the person had been pinned to the ground, was not resisting arrest, and did not present a danger to himself or to anyone else.

45.    As a direct and proximate result of Cpl. Harris's unlawful battery of Mr. Putman, Mr. Putman suffered substantial physical injury, mental anguish, and emotional harm, as well as the damages more specifically addressed in the "Damages" section below.

**COUNT IV**
**State Law Assault**
**(Cpl. Harris)**

46.    Mr. Putman incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

47.    Cpl. Harris intentionally threatened to release his canine on Mr. Putman on multiple occasions during their interaction.  Those threats placed Mr. Putman in reasonable fear of imminent physical injury.

48.    Cpl. Harris intentionally placed Mr. Putman in reasonable fear of imminent physical injury when he made those threats to release his canine on Mr. Putman, even though Cpl. Harris had no lawful basis to allow his canine to attack Mr. Putman.

49.    As a direct and proximate result of Cpl. Harris's unlawful assault of Mr. Putman, Mr. Putman suffered substantial physical injury, mental anguish, and emotional harm, as well as the damages more specifically addressed in the "Damages" section below.

**DAMAGES**

50.    As a direct result of Defendants' unconstitutional and tortious conduct as set forth above, Mr. Putman suffered economic, physical, and emotional injuries and damages, including:

a.    Past, present, and future physical pain, mental anguish and trauma, emotional pain, torment, and suffering;

b.    Past, present, and future shame, fright, mortification, embarrassment, humiliation, and loss of dignity;

c.    Significant medical expenses; and

d.    Other damages to be developed in discovery.

Further, Mr. Putman respectfully asks that this Court award him expenses that he reasonably incurs in this litigation, including reasonable attorneys' fees and expert fees, pursuant to 42 U.S.C. § 1988(b) and (c).

WHEREFORE, based upon the foregoing, Plaintiff Dillard A. Putman demands judgment against Defendants Corporal Quentin Harris and Sergeant Travis Hayton for compensatory damages in the amount to be set by the jury, and exemplary damages in the amount of in the amount to be set by the jury, together with costs incurred in the pursuit of a just resolution of this matter, pre-judgment and post-judgment interest, and attorneys' fees.

**A TRIAL BY JURY IS REQUESTED.**

Respectfully Submitted,
DILLARD A. PUTMAN


By: _____/s/_____
                        Counsel

Jonathan E. Halperin – VSB No. 32698
Andrew Lucchetti – VSB No. 86631
Halperin Law Center, LLC
5225 Hickory Park Drive, Suite B
Glen Allen, VA 23059
Phone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law
andrew@hlc.law